2026 IL App (4th) 260096-U

NOS. 4-26-0096, 4-26-0097, 4-26-0098, 4-26-0099, 4-26-0100 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 18, 2026
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* Ch. C., a Minor | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Sangamon County |
|       Petitioner-Appellee, | ) No. 24JA13 |
|       v.      (No. 4-26-0096) | ) |
| Charles C., | ) |
|       Respondent-Appellant). | ) |
| | ) |
| ———————————————— | ) No. 24JA14 |
| *In re* R.C., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
|       Petitioner-Appellee, | ) |
|       v.      (No. 4-26-0097) | ) |
| Charles C., | ) |
|       Respondent-Appellant). | ) |
| | ) |
| ———————————————— | ) No. 24JA15 |
| *In re* Car. C., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
|       Petitioner-Appellee, | ) |
|       v.      (No. 4-26-0098) | ) |
| Charles C., | ) |
|       Respondent-Appellant). | ) |
| | ) |
| ———————————————— | ) No. 24JA16 |
| *In re* Cal. C., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
|       Petitioner-Appellee, | ) |
|       v.      (No. 4-26-0099) | ) |
| Charles C., | ) |
|       Respondent-Appellant). | ) |
| | ) |
| ———————————————— | ) |

|  | ) | No. 24JA17 |
| *In re* A.C., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
|        Petitioner-Appellee, | ) | |
|        v.      (No. 4-26-0100) | ) | Honorable |
| Charles C., | ) | Karen S. Tharp, |
|        Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court's unfitness and best-interest findings were not against the manifest weight of the evidence.

¶ 2    Respondent father, Charles C., appeals from the trial court's judgments terminating his parental rights to his children, Ch. C. (born July 2012), R.C. (born December 2013), Car. C. (born July 2016), Cal. C. (born July 2015), and A.C. (born March 2018). On appeal, respondent argues the court's findings he was an unfit parent and it was in the minors' best interests to terminate his parental rights are against the manifest weight of the evidence. For the reasons that follow, we affirm the trial court's judgments.

¶ 3                      I. BACKGROUND

¶ 4    The parental rights of the minors' mother, Charlene C., were also terminated during the proceedings below. She is not, however, a party to this appeal. The following is gleaned from the record presented as it relates to respondent.

¶ 5    In August 2025, the State filed motions to terminate respondent's parental rights to the minors. In the motions, the State alleged respondent was an unfit parent in that he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2024)); (2) failed to make reasonable efforts to correct the conditions

which were the basis for the removal of the minors within a nine-month period following the minors' June 26, 2024, adjudications of neglected, namely June 26, 2024, to March 26, 2025 (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress toward the return of the minors within a nine-month period following the minors' adjudications of neglected, namely, June 26, 2024, to March 26, 2025 (*id.* § 1(D)(m)(ii)). The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Illinois Department of Children and Family Services (DCFS) as guardian, with the power to consent to adoption.

¶ 6        In January 2026, the trial court conducted a two-day hearing on the State's motions to terminate parental rights. During the fitness portion of the hearing, the court took judicial notice of certain orders entered in the minors' cases and heard testimony from the caseworker assigned to the minors' cases, the minors' mother, and respondent. The following is gleaned from the evidence presented.

¶ 7        In January 2024, the minors were taken into the temporary care of DCFS due to their exposure to domestic violence between their parents. Over the next several months, the minors' caseworker made attempts to contact respondent to complete an integrated assessment. Those attempts included reaching out to respondent's family members. The caseworker did not hear from respondent.

¶ 8        In March 2024, services were recommended to respondent based upon prior DCFS investigations. The recommended services included (1) completing programs for domestic violence, substance abuse, mental health, anger management, and parenting; (2) complying with his ongoing legal obligations; and (3) cooperating with the agency assigned to monitor the welfare of the minors.

¶ 9        In April 2024, the minors' caseworker heard from respondent. Respondent was

advised engagement and compliance with the recommended services were vital to have the minors returned to his care.

¶ 10 In June 2024, there was an incident of domestic violence between respondent and the minors' mother. Respondent was the reported perpetrator. That same month, the minors were adjudicated neglected due to their exposure to the domestic violence between their parents.

¶ 11 In July 2024, the minors were made wards of the court, and respondent signed consents for the recommended services. After completing the consents, respondent was referred to the recommended service programs.

¶ 12 During a July 2024 case review, respondent was rated unsatisfactory on all the service recommendations. At that time, he was not submitting to drug screens or attending visits with the minors. He also was not engaged in the recommended service programs.

¶ 13 In November 2024, respondent was arrested for retail theft. Thereafter, he engaged in two weeks of inpatient substance abuse treatment but then left against staff advice.

¶ 14 In December 2024, respondent completed a drug screen. The result was positive for cocaine. Respondent denied cocaine use, noting his drug of choice was methamphetamine.

¶ 15 During a January 2025 case review, respondent was rated satisfactory with respect to cooperating with the agency assigned to monitor the welfare of the minors. He rated unsatisfactory on all other service recommendations. He was not engaged in the recommended service programs. He attended about half the visits with the minors. He missed several visits without explanation. The visits which he attended went well, and the children appeared bonded to him. There were also two recent police reports of domestic violence between the minors' parents. Respondent was the reported victim.

¶ 16 Respondent did not visit with the minors between January and March 2025.

¶ 17	In March 2025, approximately one week prior to the end of the period identified in State's motions to terminate parental rights, respondent was the victim of a violent crime. He sustained severe injuries and required care in an intensive care unit for several months. He was then transferred between several rehabilitation facilities and, with DCFS approval, stayed for a short period with his mother, the foster parent of some of the minors. The injuries made respondent unable to engage in the recommended service programs. The caseworker testified respondent's mother reported taking the minors in her care to visit with respondent.

¶ 18	As for the visits respondent attended, the minors appeared to enjoy the visits and be bonded to respondent. The minors were negatively affected by respondent's inconsistent attendance at visits.

¶ 19	The minor's mother testified she and respondent were no longer in a romantic relationship but communicated daily about the minors. She also testified they had recently spoken about getting back together for the benefit of the minors. The minors' mother had not engaged in the service programs recommended to her.

¶ 20	At the time of the fitness hearing, respondent resided in a rehabilitation facility. The caseworker made attempts to contact respondent after he was injured. Those attempts included contacting the facilities where respondent resided. The caseworker did not hear from respondent.

¶ 21	Respondent applied for disability income and "appealed" the decision. He believed he would be able to care for the minors if he received that income. He testified he no longer used drugs and believed he was able to function independently.

¶ 22	When asked if he felt he cooperated with the minors' caseworker, respondent testified, "Not really because when she told me that I had to go take a drop, I was too busy running the streets."

¶ 23    Based on this information, the trial court found respondent was an unfit parent for the reasons alleged in the State's motions to terminate parental rights.

¶ 24    During the best-interest portion of the hearing, the trial court took judicial notice of the evidence presented during the fitness portion of the hearing and heard testimony from the minors' caseworker and respondent. The following is gleaned from the evidence presented.

¶ 25    Car. C. and R.C. had been placed with their maternal grandmother for over a year. Their older sibling, as well as the grandmother's teenage daughter, also resided in the household. The children were doing well in their placement, and the placement met their needs. The grandmother was willing to provide the children with permanency through guardianship. She preferred guardianship but was considering adoption; a legal screening was pending. The children were bonded to their grandmother and relied upon her for their needs.

¶ 26    Ch. C., Cal. C., and A.C. had been placed with their paternal grandmother for over a year. The grandmother's paramour and an adult grandchild also resided in the three-bedroom household, where the children shared a room. The children were doing well in their placement, and the placement met their needs. The grandmother was willing to provide the children with permanency through adoption. The grandmother was also willing to care for the other minors but believed her home was too small to do so. The children were bonded to their grandmother and relied upon her for their needs.

¶ 27    The minors participated in sibling visits each month. The grandmothers, who lived approximately a 10-mintue drive from each other, were open to continuing the sibling visits. They were also open to continuing relationships between the minors and their parents. The grandmothers did not get along well, but the agency was trying to facilitate a working relationship between them to benefit the minors. The grandmothers were interested in seeing their grandchildren who were

not placed with them. The grandmothers had expressed a willingness to overcome their differences.

¶ 28 Respondent resided at a rehabilitation facility. He planned on obtaining a residence of his own to care for the minors once he received disability income. He also planned to use his disability income and his "kids' assistance" to provide care for the minors.

¶ 29 The caseworker testified respondent's mother had taken the children in her care to see respondent. Respondent disputed this testimony, indicating he had not seen the minors for several months. He testified he had video contact with the minors.

¶ 30 The caseworker had not heard from respondent for some time, despite her repeated attempts to contact him. Respondent testified he attempted to contact the caseworker.

¶ 31 The caseworker believed it was in the minors' best interests to terminate respondent's parental rights.

¶ 32 Based on this information, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2024)), found it would be in the minors' best interests to terminate respondent's parental rights. The court entered written orders terminating respondent's parental rights to the minors.

¶ 33 This appeal followed.

¶ 34 II. ANALYSIS

¶ 35 On appeal, respondent argues the trial court's findings he was an unfit parent and it was in the minors' best interests to terminate his parental rights are against the manifest weight of the evidence. The State disagrees.

¶ 36 We begin with respondent's challenge to the trial court's finding of unfitness. The

State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 37 The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)). Section 1(D)(m)(ii) states, in pertinent part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." *Id.*

¶ 38 "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007).

¶ 39 In this case, the relevant time period was June 26, 2024, to March 26, 2025. The evidence showed respondent failed to engage in most of the recommended service programs during this period. Additionally, he was arrested for retail theft, tested positive for cocaine, and failed to

consistently attend visits with the minors. Respondent, in support of his position, emphasizes his injuries prevented him from engaging in the recommended service programs; however, he did not sustain those injuries until the end of the relevant period, and, therefore, they do not explain his lack of earlier engagement. Given the information gleaned from the evidence presented, we find the trial court's unfitness finding based on respondent's failure to make reasonable progress toward the return of the minors is not against the manifest weight of the evidence.

¶ 40        As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70.

¶ 41        We turn next to respondent's challenge to the trial court's best-interest findings. The State must prove termination is in the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 42        When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2024). The focus is on the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364.

¶ 43        In this case, the evidence showed the minors had been placed with either their maternal or paternal grandmothers for at least a year and their needs were being met in their placements. The placements allowed for continued sibling interactions, and the grandmothers

expressed a willingness to facilitate those interactions. Conversely, respondent was not engaged in, nor did he complete, any of the recommended service programs, and he was unable to provide or care for the minors. Given the information gleaned from the evidence presented, we conclude the trial court's finding it was in the minors' best interests to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 44    In reaching this decision, we reject respondent's suggestion that the trial court terminated his parental rights simply because of his disability. The record shows the court carefully considered the evidence and the law before reaching its findings at the fitness and best-interest hearings and, ultimately, terminating respondent's parental rights.

¶ 45                                III. CONCLUSION

¶ 46    For the reasons stated, we affirm the trial court's judgments.

¶ 47    Affirmed.